NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
RANDY KNAUB,                    :
                                :
        Petitioner,             :    Civil No. 11-938 (RMB)
                                :
v.                              :
                                :
DONNA ZICKEFOOSE,               :    OPINION
                                :
Respondent.                     :
                                :
```

**APPEARANCES**:

RANDY KNAUB, Petitioner pro se
#20157-047
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

PAUL A. BLAINE, Counsel for Respondent
Office of the United States Attorney
Camden Federal Bldg. & U.S. Courthouse
401 Market Street
4TH Floor
Camden, NJ 08101

**BUMB**, District Judge

Randy Knaub ("Petitioner") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking expungement of his record and restoration of good conduct time, which had been disallowed as a disciplinary sanction for committing the prohibited act of Possessing a Hazardous Tool (Code 108). Based upon Petitioner's affidavit of indigence, Petitioner's application to proceed in forma pauperis is hereby granted. For the reasons expressed below, the Court will deny the Petition.

**I. BACKGROUND**

Petitioner challenges the loss of 41 days of earned good conduct time and ten days "yet earned" imposed by the BOP as a disciplinary sanction for committing the prohibited act of Possessing a Hazardous Tool (Code 108).[1] Petitioner argues: (1) the BOP violated the Due Process Clause by increasing the severity of the sanctions for possession of a cellular device without adequate notice; (2) the BOP's failure to abide by the Administrative Procedure Act (APA) when changing the rule regarding possession of a cell phone renders the rule unenforceable; (3) the rule prohibiting cell phones is void for vagueness; and (4) Petitioner has been treated differently than other similarly situated prisoners, which violates the Equal Protection Clause.

On June 14, 2007, Petitioner was sentenced in the United States District Court for the District of Nebraska to a 63 month term of imprisonment with three years of supervised release to follow, for conspiracy to distribute narcotics, in violation of 21 U.S.C. 846. (Resp.'s Br. at 2.) If Petitioner receives all good conduct time awardable to him his projected release date is April

---

[1] To the extent that Petitioner challenges loss of phone for one year, loss of visitation for one year and the recommendation for a disciplinary transfer, these claims are not cognizable under 28 U.S.C. § 2241 because they do not affect the fact or duration of Petitioner's confinement.  See Ganim v. Fed. Bureau of Prisons, 235 Fed. Appx. 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. Appx. 551 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 242 n.5 (3d Cir. 2005).  Alternatively, while the Due Process Clause protects against the revocation of good conduct time, it does not protect against the imposition of the other sanctions.  See Sandin v. Conner, 515 U.S. 472 (1995); Torres v. Fauver, 292 F. 3d 141, 150-51 (3d Cir. 2002).

10, 2012.  (Id. at Ex. 1.)

On September 27, 2007, Petitioner was designated to the Federal Prison Camp in Yankton, South Dakota. (Id. at Ex. 5.)  On October 21, 2008, Petitioner was charged with Possession of a Hazardous Tool, a violation of Inmate Disciplinary Code 108. (Id. at Ex. 6.)  The incident report stated:

> On October 21, 2008 at 2:10 PM, I conducted a search of inmate Petitioner, Randy #20157-047 on range 4 in Kingsway Hall. While conducting the search, I moved back inmate Petitioner's locker to notice a cell phone wrapped in toilet paper under his locker labeled 47L.

(Id.)  The incident report was delivered to Petitioner at 5:52 p.m. on the same date. (Id.)  Petitioner was read his rights. (Id.)  He stated he understood his rights.  (Id.)  He denied the phone was his.  (Id.)

On October 24, 2008, the initial hearing was held before a Unit Disciple Committee ("UDC") at FPC Yankton. (Id. at § 21.)  At the hearing, Petitioner denied possession of the cell phone and stated, "I'm a straight guy.  Every time I've had a shot, I've either plead guilty or not and been honest.  That was planted, check my phone records." (Id.)  At the conclusion of the hearing the UDC referred the incident report to the Discipline Hearing Officer ("DHO") for disposition.  (Id.)  Petitioner requested a staff representative at the hearing and five inmates as witnesses to testify he had no knowledge of a cell phone.  (Id.)

The DHO hearing was held on November 6, 2008. (Id. at Ex. 7.)

3

At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited act of Code 108, Possession of a Hazardous Tool. (Id.) Petitioner was sanctioned with disallowance of 41 days good conduct time, forfeiture of 10 days of non-vested good time credit, 60 days in disciplinary segregation, six months loss of commissary privileges, one year loss of telephone privileges, one year loss of visitation, and recommended disciplinary transfer. (Id.)

On or about December 22, 2008, Petitioner filed remedy request with the North Central Regional Office, in which he challenged the sufficiency of the evidence relied upon in finding that he possessed a cell phone. (Id. at Ex. 3.) On January 20, 2009, Petitioner was transferred to FCI Fort Dix, New Jersey. (Id. at Ex. 5.) On or about January 23, 2009, the Regional Counsel partially granted Petitioner's remedy request due to a procedural error and remanded the incident report for a new hearing. (Id. at Ex. 3.) On or about March 13, 2009, Petitioner filed an appeal with the Central Office. (Id. at Ex. 2.) The appeal was rejected as untimely. Petitioner was instructed to provide documentation that the untimeliness of the appeal was not his fault. (Id.) Petitioner took no further action with regard to the administrative appeal. (Id.)

On April 1, 2009, the DHO at FCI Fort Dix held a rehearing of incident report number 1791410. (Id. at Ex. 8.) At the conclusion

4

of the hearing, the DHO determined Petitioner committed the prohibited act of Code 108, Possession of a Hazardous Tool. (Id.) The same sanctions initially imposed at Yankton, were reimposed. (Id.) On or about July 6, 2009, Petitioner filed Remedy ID 540308-R1 with the BOP's Northeast Regional Office, requesting a dismissal of the rehearing. (Id. at Exhibit 2 & 4.) He claimed he did not have adequate time to defend himself. He also stated he was not given records of the Inmate Telephone System, which were part of his evidence. (Id. at Ex. 4.) On August 4, 2009, the Regional Director denied the appeal. The Regional Director noted the cell phone was found under Petitioner's locker, which he was required to keep clear of contraband, and that the reporting officer was able to move the locker back on his own, unassisted, to observe the cell phone. It was also noted that Petitioner did not raise any procedural issues at the rehearing, and did not request or indicate that he was waiting for additional evidence. A review of ITS records was not required. (Id.) Petitioner did not further appeal to the BOP Central Office. (Id. at Ex. 2.) At no time during either of his administrative appeals did Petitioner raise for the BOP's consideration, any of the arguments he raises in this habeas corpus proceeding. (Id.)

On February 22, 2011, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. §2241. (Docket Entry No. 1.) Petitioner argues: (1) the BOP violated the Due Process Clause

5

by increasing the severity of the sanctions for possession of a cell phone without adequate notice; (2) the BOP's failure to abide by the APA when changing the rule regarding possession of a cell phone renders the rule unenforceable; (3) the rule prohibiting cell phones is void for vagueness; and (4) Petitioner has been treated differently than other similarly situated prisoners, which violates the Equal Protection Clause.

On May 10, 2011, Respondent filed her Answer to the Petition. (Docket Entry No. 5.)  Respondent argues that: (1) the petition must be dismissed because Petitioner has not properly exhausted his administrative remedies with respect to his claims; (2) Petitioner's due process right to notice that possession of a cell phone is a disciplinary code offense, was fully satisfied by the language of Code 108.  He had no separate due process right to be advised by the BOP that it would treat the offense more seriously in the sanctions to be imposed; (3) The BOP was not required to follow APA promulgation procedures in making cell phone or related equipment possession a Code 108 hazardous tool offense; and (4) Petitioner cannot establish a violation of Equal Protection principles based upon the BOP's legitimate exercise of its administrative discretion in the orderly and secure operation of its institutions.

## II. DISCUSSION

## A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on federal grounds, and he was incarcerated in New Jersey at the time he filed the Petition.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005).

**B.  Petitioner's Claims**

**1. Exhaustion of Administrative Remedies**

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available

administrative remedies.   *See*, *e.g.*, Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).   The exhaustion doctrine promotes a number of goals: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).   *See also* Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).   Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.   *See*, *e.g.*, Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, at *2 (E.D.Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

     In general, the BOP Administrative Remedy Program is a

multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  <u>Id.</u>  Appeal to the General Counsel is the final administrative appeal.  <u>Id.</u>  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

DHO appeals, as in this matter, are submitted directly to the Regional Director.  28 C.F.R. § 542.14(d)(2).  Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, although Petitioner did appeal the sanctions imposed as a result of the DHO hearing, he did not assert any of the arguments stated in the instant petition.  Petitioner has not presented this Court with any attempt to justify his failure to exhaust his administrative remedies.  Accordingly, the petition for a writ of habeas corpus will be dismissed in its entirety for failure to exhaust administrative remedies.

**2. Merits of the Petition**

In the alternative, the Court also finds that the petition would also be denied on the merits.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed.... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law.  Asquith v. Department of Corrections,

186 F.3d 407, 409 (3d Cir. 1999). Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

or correctional goals,[3] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66.  Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  Id. at 569-70.

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record.  Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[4]

Here, there is no suggestion in the Petition that the Bureau of Prisons failed to comply with these due process principles applicable to discipline hearings that result in loss of good time credits.  Moreover, the sanctions imposed clearly are within the sanctions permitted for a violation of Code 108.  See 28 C.F.R. §

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  See Ponte v. Real, 471 U.S. 491 (1985). "{P}rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners."  Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

514.13.[5]  Instead, Petitioner has challenged the discipline proceeding on various other grounds, discussed below.

Recently, in Hall v. Zickefoose, the Third Circuit examined claims nearly identical to those raised here.  In upholding the District Court's denial of the petition, the Court stated the following:

> Hall argued that his due process rights were violated because he did not receive notice that the penalty for possession of a cellular phone increased from a moderate severity level violation under PAC 305 to a greatest severity level violation under PAC 108. Hall noted that a 2005 proposal to amend PAC 108 to explicitly refer to a cellular phone as a hazardous tool was not adopted. Therefore, he asserted that BOP lacked the authority to charge him with a PAC 108 violation since BOP's defining of a cellular phone as a hazardous tool under PAC 108 was not completed through the Administrative Procedures Act ("APA").
>
> We agree with the District Court and reject Hall's argument. The APA requires that general notice of the proposed regulation be published in the Federal Register and that interested persons be given an opportunity to comment on the proposed regulation. 5 U.S.C. § 553; Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003). The APA, however, applies only to legislative rules, which are rules that impose new duties upon the regulated party. See Chao, 327 F.3d at 227. The APA does not apply to PAC 108 because PAC 108 is an interpretive rule.  See id. (If the agency is not adding or amending language to the regulation, the rule is interpretive). BOP acted within its authority in interpreting PAC 108, and Hall has not shown that BOP's interpretation that a cellular phone is a hazardous tool is plainly erroneous or inconsistent with PAC 108. See Chong v. Dist. Dir., Immigration & Naturalization Serv., 264 F.3d 378, 389 (3d Cir. 2001) ("An agency's interpretation of its own regulation is

---

[5]  To the extent the Petition could be construed as asserting that the BOP failed to comply with these due process provisions, any such claim is meritless.

13

controlling ... unless it is plainly erroneous or inconsistent with the regulation.")

Hall also argued that his due process rights were violated because PAC 108 is void for vagueness. The District Court properly determined that this argument is meritless. A regulation is void for vagueness if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000). We are not persuaded that PAC 108 is unconstitutionally vague. It is clear what the regulation as a whole prohibits, which limits the possibility of arbitrary and discriminatory application. <u>See</u> <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-10 (1972). One can readily infer from the language of PAC 108 that a cellular phone would be among those tools "likely to be used in an escape or escape attempt," or otherwise "hazardous to institutional security ." Accordingly, Hall's void for vagueness claim fails.

<u>Hall v. Zickefoose</u>, 2011 WL 5009872, at *1-2 (3d Cir. October 21, 2011.)

### a.  Ground One

In Ground One, Petitioner asserts that the BOP violated the Due Process Clause by increasing the severity of the sanctions for possession of a cell phone without adequate notice.  Petitioner argues that at the time he was found to be in possession of a cell phone, said violation was classified as a violation of Code 305.  However, when Petitioner was charged, he was charged with a violation of Code 108, which is considered a severe level violation.  Petitioner argues that he received no notice of the change in severity level regarding possession of a cell phone.  A certification filed with his Petition states that "the handbook for

14

which [he] signed during intake did not identify 'possession of a cell phone' as a PAC 100 series offense," however, it is a form affidavit and it is unsigned.  Respondent argues that the Petition must be denied on this ground because Petitioner's due process right to notice that possession of a cell phone is a disciplinary code offense, was fully satisfied by the language of Code 108 and he had no separate due process right to be advised by the BOP that it would treat the offense more seriously in the sanctions to be imposed.

Petitioner's assertion that though he knew he was committing a disciplinary infraction, he thought he would suffer a different type of sanction than the sanction actually imposed and this violates his due process rights is without merit.  While Petitioner has due process rights to notice as to general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected.  See, e.g., Adams v. Gunnell, 729 F.2d 362, 368-70 (5th Cir. 1984) (a prisoner's right to notice means that the rules must give a person of ordinary intelligence notice of the actions prohibited); accord Cook v. Warden, 241 Fed. App'x 828 (3d Cir. 2007) (per curiam) (dismissing the inmate's § 2241 challenges to vagueness of a BOP's Code and finding that the notice was sufficient where the inmate was provided with a prison handbook informing him of the categories of acts proscribed, even though

15

different prison handbooks detailed the proscribed activities with
different degree of particularity); <u>Cotten v. Ward</u>, 190 Fed. App'x
701, 702 (10th Cir. 2006) (affirming dismissal of § 2241 challenges
where the prison rule was "sufficiently clear and unambiguous to
provide fair notice to inmates of what conduct [was] prohibited");
<u>see also</u> <u>Eason v. Owen</u>, 2010 WL 3192932 (D.S.C. Apr. 30, 2010)
(dismissing an inmate's § 2241 challenges asserting that possession
of a cell phone should be deemed a "lesser included offense" of
Code 108 and, thus, subjected to a lesser sanction under another
BOP Code); <u>see also</u> <u>Hall</u>, 2011 WL 5009872, at *1-2.  Here,
Petitioner concedes that at all pertinent times he was on notice
that possession of a cell phone was a proscribed offense and,
importantly, a sanctionable misconduct. (Pet. at 6.)  In addition,
Petitioner concedes that, at all pertinent times, he was aware of
the exact language of Code 108, which prohibits "[p]ossession . .
. of a hazardous tool [i.e., the] tools most likely to be used in
an escape or escape attempt."  (<u>Id.</u> at 7.)  Consequently,
Petitioner was put on notice, by the very language of Code 108,
that Code 108 sanctions could be applied to him for the misconduct
of possession of a hazardous tool in the form of a cell phone.  <u>See</u>
<u>Robinson v. Warden</u>, 250 Fed. App'x 462 (3d Cir. 2007) (per curiam)
(rejecting the inmate's argument that Code 108 was too vague for
the purposes of providing notice of the Code's applicability to
cell phone infractions).  Petitioner's allegations to that effect

16

will, therefore, be denied.

**b. Ground Two**

In his second ground for relief, Petitioner argues that changes to the BOP rules must be done using the process identified by the APA and where there is a failure to do so, the BOP is precluded from enforcing the proposed rule.

As the Courts in both Hudson v. Zickefoose, 2010 WL 4746220, No. 10-251 (RBK) (D.N.J. November 15, 2010) and Pittman v. Zickefoose, 10-5057 (RMB) stated, "BOP's internal agency guideline[s]" are not subject to the notice and comment requirements of the APA. See Reno v. Koray, 515 U.S. 50 (1995); see also Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (rejecting prisoner's argument that BOP's change in policy was invalid because it was not promulgated in accordance with the APA, as agency guidelines are "promulgated internally and may be altered at will by the BOP"); Koray v. Sizer, 21 F.3d 558, 562 (3d Cir. 1994) (internal agency guidelines may be altered by the BOP at will and are not subject to the notice and comment requirements of the APA), rev'd on other grounds sub nom Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Further, the Third Circuit in Hall also found the same. Hall, 2011 WL 5009872, at *1-2 ("The APA does not apply to PAC 108 because PAC 108 is an interpretive rule.") As such, Petitioner's argument to the contrary has no merit.

**c.  Ground Three**

In his third ground for relief, Petitioner argues that the rule prohibiting cell phones, Code 108, is void for vagueness.

The Third Circuit has specifically rejected the argument that Code 108 is void for vagueness, and that a cell phone is not a hazardous tool, stating that

> [a] statute or regulation must fail for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Prohibited acts under BOP regulations include Code 108, entitled "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R § 541.13, Table 3.  Code 108 is not unconstitutionally vague on its face...The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations, see Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389 (3d Cir. 2001)...

Robinson, 250 Fed.Appx. at 464.  See also Hall, 2011 WL 5009872, at *1-2 ("We are not persuaded that PAC 108 is unconstitutionally vague. It is clear what the regulation as a whole prohibits, which limits the possibility of arbitrary and discriminatory application...One can readily infer from the language of PAC 108 that a cellular phone would be among those tools "likely to be used in an escape or escape attempt," or otherwise "hazardous to institutional security.")  Therefore, the petition would also be denied on Ground Three for substantive reasons.

**d.  Ground Four**

In his fourth ground for relief, Petitioner argues that the BOP has treated him differently than other similarly situated inmates and this is a violation of the Equal Protection Clause. Specifically, Petitioner alleges that prison officials choose between inmates found to be in possession of cellular phones and randomly charge those inmates with different code violations, ranging from 305, 108 and 199.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

Thus, although lawful imprisonment entails the necessary

19

withdrawal or limitation of many rights and privileges, see Pell v. Procunier, 417 U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir.2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir.1980).

Here, Petitioner has not made any allegations that he is part of a suspect class.  Rather, he generally alleges that prison staff are making disciplinary decisions randomly, at their own discretion.  A party alleging an equal protection violation has the burden of proving the existence of purposeful discrimination. Barney v. Camden County Bd. of Chosen Freeholders, 2009 WL 5103206, at *9 (D.N.J. December 17, 2009)(citing McClesky v. Kemp, 481 U.S. 279, 292 (1987)).  Petitioner fails to do so.

In fact, by his own words, "they [the prison staff] chose between various inmates found to be in possession of [sic] phone and randomly charge different PAC offenses, 305, 108, 199." (Pet. at 14.)  Further, though he points to two other cases where inmates had their initial Code 108 charges reduced because they did not have notice of the prison rule change, Petitioner has not established that these other inmates were "similarly situated." See Hall, 2011 WL 5009872, at *1-2 ("Although Hall claimed that there were three inmates that received a lesser sanction for the same disciplinary infraction, he failed to show that the three

inmates were otherwise similarly situated...Accordingly, his equal protection claim fails.")  Therefore, the Petition would also be denied for substantive reasons on Ground Four.

## III.  Conclusion

For the above reasons, the Petition for a Writ of Habeas Corpus will be denied.  An appropriate Order will be issued.


s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: December 12, 2011

21